## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

PHILLIP ANDREW SCOTT,

      Plaintiff,

v.

CITY OF BATTLE CREEK, DET. RYAN STRUNK,
*in his Individual Capacity*, and OFFICER MICHAEL
HARRISON, *in his Individual Capacity*;
jointly and severally,

      Defendants.

Case No.
Hon.

---

DAVID S. SHIENER (P78608)
JEFFREY T. STEWART (P24138)
VEN R. JOHNSON (P39219)
**JOHNSON LAW, PLC**
535 Griswold, Suite 2632
Detroit, Michigan 46226
(313) 324-8300
dshiener@venjohnsonlaw.com
jstewart@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

---

NOW COMES Plaintiff PHILLIP ANDREW SCOTT, by and through his attorneys JOHNSON LAW, PLC, and for his Complaint against the above-named Defendants, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is a civil action for damages brought pursuant to Federal and Michigan statutory and common law.

2.      Plaintiff PHILLIP ANDREW SCOTT ("SCOTT") at all times relevant to this cause of action was a resident of the County of Calhoun, State of Michigan.

3.      Defendant CITY OF BATTLE CREEK ("BATTLE CREEK") is a Michigan municipal corporation that is duly organized under the laws of the State of Michigan and carrying on governmental functions in the County of Calhoun, State of Michigan.

4.      The Battle Creek Police Department at all times relevant to this cause of action was an agency of Defendant BATTLE CREEK.

5.      At all times relevant to this cause of action, Defendant DET. RYAN STRUNK ("STRUNK") was an employee of Defendant BATTLE CREEK via the Battle Creek Police Department and was acting under the color of state law and in the course and scope of his employment.

6.      At all times relevant to this cause of action, Defendant OFFICER MICHAEL HARRISON ("HARRISON") was an employee of Defendant BATTLE CREEK via the Battle Creek Police Department and was acting under the color of state law and in the course and scope of his employment.

7.      This cause of action is being brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution, and pendant claims arising under the laws of the State of Michigan.

8.      This Court has jurisdiction over the claims arising under to Federal law pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the claims arising out of Michigan state law pursuant to 28 U.S.C. § 1367.

9.      The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

10.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the City of Battle Creek, County of Calhoun, State of Michigan, and on information and belief, the individually-named Defendants reside and/or conduct business within this District.

## COMMON ALLEGATIONS

11.     Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

12.     On or around the evening of March 18, 2017, Kamariah Hall was present at the Omni Community Credit Union located at 220 E. Roosevelt Avenue, Battle Creek, Michigan 49017.

13.     Ms. Hall at that time was using a drive-up ATM machine located outside of the Omni Community Credit Union to retrieve cash.

14.     As Ms. Hall retrieved $30.00 from the ATM machine, two male individuals who were armed with handguns approached Ms. Hall's vehicle from both sides at the front driver's side window and the front passenger's side window.

15.     The two individuals who approached Ms. Hall's vehicles had towels or some other type of garment covering their faces.

16.     The two individuals who approached Ms. Hall's vehicle pointed their handguns at Ms. Hall and ordered her to withdraw the remainder of the money that she had in her account, which amounted to an additional $120.00.

17.     The individual who was at the front passenger's side window then unlocked the front passenger's side door and entered into the front passenger's seat of the vehicle.

18.    The individual who was at the front driver's side window then entered into the rear driver's side seat of the vehicle.

19.    After both individuals were inside the vehicle, the individual in the rear driver's side seat of the vehicle instructed the individual who was in the front passenger's side seat to insert his handgun into Ms. Hall's mouth, with which he complied.

20.    The individual in the rear driver's side seat of the vehicle pulled the slide of the barrel of his handgun back to arm the handgun and pressed the handgun to the rear of Ms. Hall's head and instructed her to drive away from the Omni Community Credit Union, with which Ms. Hall complied.

21.    The individual in the rear driver's side seat of the vehicle directed Ms. Hall to drive to Hubert Street and Gardenia Street, which is a dead-end road, and instructed Ms. Hall not to look at any street signs.

22.    Once at the dead-end road, the two individuals exited the vehicle and instructed Ms. Hall to drive away, with which she complied.

23.    A witness to the events at the Omni Community Credit Union described above contacted the Battle Creek Police Department, which dispatched officers to respond to the Omni Community Credit Union.

24.    Ms. Hall at the time that the two individuals exited her vehicle did not have a cellular phone in her possession.

25.    Ms. Hall after the two individuals exited her vehicle travelled home and contacted her father and notified him of what had occurred with the two individuals.

26.    Ms. Hall's father contacted the Battle Creek Police Department and informed them of the events that occurred at the Omni Community Credit Union described above.

27.     Ms. Hall's father informed the Battle Creek Police Department of Ms. Hall's location and multiple officers from the Battle Creek Police Department made contact with Ms. Hall at her home.

28.     Officers who made contact with Ms. Hall at her home obtained a description of the events that occurred with the two individuals at the Omni Community Credit Union and in her car as described above.

29.     The complete descriptions that Ms. Hall provided of the two individuals, as set forth in Defendant HARRISON's Reporting Officer Narrative, were as follows:

a.     "The first SUS is described as a b/m, approx. 6'2", 200 lbs., wearing a black or dark gray shirt or hoodie with a white towel or shirt wrapped around his face."

b.     The second SUS was described as a b/m, approx.. 5'10", with a small build, wearing a dark colored t-shirt or hoodie and was also wearing a towel or t-shirt tied around his face."

30.     According to Defendant HARRISON's Reporting Officer Narrative, Ms. Hall did not mention that either of the two individuals had a tattoo on his hand.

31.     Ms. Hall identified the location at which the individuals exited her vehicle and multiple officers from the Battle Creek Police Department with K-9 units set up a perimeter at that location.

32.     The officers from the Battle Creek Police Department with K-9 units conducted a search in the area of Hubert Street and Gardenia Street.

33.     The officers from the Battle Creek Police Department located a black hoodie sweatshirt and a towel, which matched Ms. Hall's description of what the two individuals had around their faces.

34.     The articles that were recovered were set forth in a Case Supplemental Report as follows:

    a.  "1 Black Adidas XXL Sweatshirt, collected from the north side of the parking lot near the carport."

    b.  "1 Pink Towel, collected from the top of some shrubs located west of Redner and west of the apartment building at 20 Redner."

35.     Officers from the Battle Creek Police Department examined Ms. Hall's vehicle for fingerprints but were unable to locate any ridge structures of value for comparison.

36.     Officers from the Battle Creek Police Department also obtained buccal swabs from Ms. Hall's vehicle in efforts to obtain DNA samples for identification of either of the two individuals.

37.     On August 10, 2017, Defendant HARRISON authored a Case Supplemental Report in which he set forth that there was no match of the DNA samples submitted from Ms. Hall's vehicle and that "[t]here are no known suspects[]" and "[t]his case is now closed."

38.     In a Case Supplemental Report dated September 7, 2017 authored by Defendant HARRISON, Defendant HARRISON set forth that on September 1, 2017, he received a "CODIS hit from the black sweatshirt collected during the investigation[,]" and that a DNA sample located on the sweatshirt showed to be a match to Plaintiff SCOTT.

39.     Defendant HARRISON indicated in the Case Supplemental Report that he would submit a search warrant to the Calhoun County Prosecutor's Office for Plaintiff SCOTT.

40.     In a Case Supplemental Report dated September 8, 2017 authored by Defendant HARRISON, Defendant HARRISON set forth that he obtained a DNA Search Warrant for

Plaintiff SCOTT and that he attempted to make contact with Plaintiff SCOTT but was unsuccessful.

41.     On September 10, 2017, officers from the Battle Creek Police Department made contact with Plaintiff SCOTT during a traffic stop, during which Plaintiff SCOTT was served with the DNA Search Warrant and two buccal swabs with Plaintiff SCOTT's DNA were obtained.

42.     In a Case Supplemental Report dated January 3, 2018 authored by Defendant STRUNK, Defendant STRUNK set forth that a Michigan State Police Forensic Science Division report was received that states that the swabs from both the black sweatshirt and the pink towel contained DNA from Plaintiff SCOTT and "three unrelated unknown individuals[.]"

43.     Defendant STRUNK further set forth in the Case Supplemental Report dated January 3, 2018 that, based on the DNA report, Plaintiff SCOTT "has been identified as the male wearing the black sweatshirt in the back seat behind HALL as he was the only suspect wearing a black shirt/sweatshirt."

44.     Defendant STRUNK further set forth in the Case Supplemental Report dated January 3, 2018 that a warrant request would be submitted to the Calhoun County Prosecutor's office for Plaintiff SCOTT's arrest for charges that included armed robbery and weapons violations.

45.     In a Case Supplemental Report dated January 4, 2018 authored by Defendant STRUNK, Defendant STRUNK set forth that he made contact with Ms. Hall on January 1, 2018 to advise her that he was able to identify one of the individuals from the events that took place at the Omni Community Credit Union.

46.     Defendant STRUNK further set forth in the Case Supplemental Report dated January 4, 2018 set forth that he again asked Ms. Hall for description details that she could recall

from the suspects and that, according to Defendant STRUNK, Ms. Hall recalled "the male in the dark/black sweatshirt having a tattoo with flames on one of his hands."

47.     Defendant STRUNK further set forth in the Case Supplemental Report dated January 4, 2018 as follows:

> HALL thought that there was possibly some writing in the middle of the tattoo, but was not sure. This would have been the male that approached her vehicle on the drivers side. I was able to locate the scars, marks, and tattoos listed in the Battle Creek Police Records Management System and it shows him to have a skull tattoo with flames on his right arm.

48.     The Case Supplemental Report dated January 4, 2018 authored by Defendant STRUNK is the first time that any tattoo on either of the suspects' hands was noted in any police investigation report.

49.     A surveillance video recording of the ATM machine at the Omni Community Credit Union where the incident described above took place shows that the individual who entered into the back seat of Ms. Hall's vehicle was wearing a long sleeve sweatshirt and his wrist and forearm were never revealed to Ms. Hall.

50.     It was not until after Plaintiff SCOTT's DNA was identified as being present on items that were recovered from the scene of the crime and that he was identified as a potential suspect that any notation of a tattoo appeared in any police investigation report.

51.     Plaintiff SCOTT was arrested on or about January 8, 2018.

52.     A felony criminal Complaint dated January 8, 2018 was filed against Plaintiff SCOTT in which the following charges were set forth:

    a.   Robbery – Armed;

    b.   Weapons – Felony Firearm;

    c.   Carjacking;

     d.  Weapons – Felony Firearm;

     e.  Unlawful Imprisonment;

     f.  Weapons – Felony Firearm;

     g.  Weapons – Firearms – Possession by Felon; and

     h.  Weapons – Felony Firearm.

53.    Plaintiff SCOTT remained detained and in custody by the Battle Creek Police Department over the next several days.

54.    A preliminary examination took place on January 24, 2018, during which Ms. Hall testified that she saw "a tattoo on [the suspect's] hand[,]" and that she informed officers from the Battle Creek Police Department when she spoke to them.

55.    When Ms. Hall testified at the January 24, 2018 preliminary examination regarding a tattoo on one of the suspects hands, she was referring to the individual who approached her car from the passenger's side and who entered her car and sat in the passenger's seat.

56.    A judge of the Tenth District Court for the County of Calhoun determined that there was probable cause to believe that the offenses set forth above were committed and that Plaintiff SCOTT was the individual who committed them based on the facts that Plaintiff SCOTT's DNA was present on items recovered from the scene of the crimes and that Ms. Hall testified regarding a tattoo on the suspect's hand.

57.    Plaintiff SCOTT has a tattoo on his right wrist and mid-arm of the tattoo as described by Ms. Hall in the Case Supplemental Report dated January 4, 2018 discussed above.

58.    A felony Information dated February 7, 2018 was filed against Plaintiff SCOTT in which the following charges were set forth:

     a.  Robbery – Armed;

b.  Weapons – Felony Firearm;

c.  Carjacking;

d.  Weapons – Felony Firearm;

e.  Unlawful Imprisonment;

f.  Weapons – Felony Firearm;

g.  Weapons – Firearms – Possession by Felon; and

h.  Weapons – Felony Firearm.

59.    Plaintiff SCOTT remained in detention for the next several months.

60.    A trial commenced on or about November 6, 2018.

61.    Ms. Hall at the November, 2018 trial testified that the individual who approached her car from the passenger's side and who entered her car and sat in the passenger's seat "had on lighter clothing" than the individual who entered the rear driver's side seat of the vehicle, who had darker clothing.

62.    Ms. Hall at the November, 2018 trial first testified that the individual who approached her car from the passenger's side and who entered her car and sat in the passenger's seat had a tattoo on his right hand with a skull with flames, but then later testified that the individual who entered the rear driver's side seat of the vehicle had that tattoo on his hand.

63.    Defendant STRUNK at the November, 2018 testified that "right around the time of the incident there was information that we received about the suspect that approached on the driver (sic) side in the black hooded sweatshirt having a tattoo on his arm or hand in reference to some flames[,]" and that "the tattoo information was within that first week."

64.     Defendant STRUNK at the November, 2018 testified that there were records at the Battle Creek Police Department that identified a tattoo on Plaintiff SCOTT's right arm, which is information he had prior to speaking with Ms. Hall on or around January 1, 2018.

65.     The jury in the November, 2018 trial was unable to reach a verdict and a mistrial was declared on November 14, 2018.

66.     Plaintiff SCOTT remained in detention following the November, 2018 trial until a second trial nearly a year later.

67.     On November 15, 2018, Defendant STRUNK submitted an Affidavit for Search Warrant to obtain photographs of Plaintiff SCOTT, in which Defendant STRUNK claimed that "[w]ithin a week after the incident, Hall indicated that the suspect that approached the driver's side of her vehicle had some sort of tattoo on his hand that contained flames."

68.     A second trial commenced in August of 2019.

69.     Defendant STRUNK and/or Defendant HARRISON at the August, 2019 trial again provided testimony that Ms. Hall had within a week of the incident identified a tattoo on one of the individual's hands, despite the fact that the individual who entered the rear of Ms. Hall's vehicle wore a long sleeve shirt and that individual's wrist and forearm were never revealed to Ms. Hall.

70.     Plaintiff SCOTT was acquitted of all charges at the end of the August 2019 trial.

### COUNT I – FALSE ARREST AND FALSE IMPRISONMENT IN VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AS TO DEFENDANTS STRUNK AND HARRISON

71.     Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

72.     Defendants STRUNK and HARRISON at all times relevant to this cause of action were agents and/or employees of Defendant BATTLE CREEK and were acting under the color of state law.

73.     At all times relevant to this cause of action, Plaintiff SCOTT had a constitutional right to be protected from detention without legal process under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

74.     In order to arrest Plaintiff SCOTT, Defendants STRUNK and HARRISON knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood that Ms. Hall had identified a tattoo that would identify Plaintiff SCOTT as a perpetrator of a crime prior to the time that he was identified as a potential suspect when she in fact had not, and could not have, seen any tattoos on the individual's wrist or forearm.

75.     Such false statements or omissions were material to findings of probable cause that Plaintiff SCOTT committed a crime, because without such statements or omissions, there was insufficient evidence to establish probable cause to arrest and detain Plaintiff SCOTT.

76.     The constitutional right to protection from detention without legal process under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution is and was at times relevant to this cause of action clearly establish of which a reasonable person and/or police officer would have known, and the actions of Defendants STRUNK and HARRISON were therefore objectively unreasonable in light of such clearly established rights.

77.     Defendants STRUNK and HARRISON are not entitled to qualified immunity.

78.     As a direct and proximate result of the actions of Defendants STRUNK and HARRISON as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

a. Physical pain and suffering;

b. Mental anguish;

c. Fright and shock;

d. Denial of social pleasure and enjoyments;

e. Embarrassment, humiliation or mortification;

f. Lost wages and/or earning capacity; and

g. All other damages learned through the course of discovery.

79.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff SCOTT for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff SCOTT and/or to punish or deter Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

80.     The actions of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the damages that would be inflicted upon Plaintiff SCOTT.  As a result of such intentional conduct, Plaintiff SCOTT is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT II – MALICIOUS PROSECUTION IN VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AS TO DEFENDANTS STRUNK AND HARRISON

81.     Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

82.     Defendants STRUNK and HARRISON at all times relevant to this cause of action were agents and/or employees of Defendant BATTLE CREEK and were acting under the color of state law.

83.     At all times relevant to this cause of action, Plaintiff SCOTT had a constitutional right to be protected from criminal prosecution without probable cause under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

84.     A criminal prosecution was initiated against Plaintiff SCOTT, and Defendants STRUNK and HARRISON made, influenced, or participated in the decision to prosecute Defendant SCOTT, because Defendants STRUNK and HARRISON stated deliberate falsehoods or made deliberate omissions or showed reckless disregard for the truth by stating that Ms. Hall had identified a tattoo that would identify Plaintiff SCOTT as a perpetrator of a crime prior to the time that he was identified as a potential suspect when she in fact had not, and could not have, seen any tattoos on the individual's wrist or forearm.

85.     Such false statements or omissions were material to findings of probable cause that Plaintiff SCOTT committed a crime, because without such statements or omissions, there was insufficient evidence to establish probable cause to initiate and continue a criminal prosecution against Plaintiff SCOTT.

86.     There was a lack of probable cause to initiate and continue a criminal prosecution against Plaintiff SCOTT where there was not sufficient evidence to identify him as the perpetrator of the crimes with which he was wrongfully charged and for which he was wrongfully tried.

87.     Plaintiff SCOTT suffered a deprivation of his liberty as a consequence of the criminal prosecution for which there was no probable cause by being incarcerated for approximately 19 months.

88.     The criminal prosecution against Plaintiff SCOTT was resolved in Plaintiff SCOTT's favor when he was found to be not guilty of the crimes with which he was wrongfully charged and for which he was wrongfully tried.

89.     The constitutional right to protection from criminal prosecution without probable cause under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution is and was at times relevant to this cause of action clearly establish of which a reasonable person and/or police officer would have known, and the actions of Defendants STRUNK and HARRISON were therefore objectively unreasonable in light of such clearly established rights.

90.     Defendants STRUNK and HARRISON are not entitled to qualified immunity.

91.     As a direct and proximate result of the actions of Defendants STRUNK and HARRISON as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

        a.   Physical pain and suffering;

        b.   Mental anguish;

        c.   Fright and shock;

        d.   Denial of social pleasure and enjoyments;

        e.   Embarrassment, humiliation or mortification;

        f.   Lost wages and/or earning capacity; and

        g.   All other damages learned through the course of discovery.

92.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff SCOTT for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff SCOTT and/or to punish or deter Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

93.     The actions of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the damages that would be inflicted upon Plaintiff SCOTT.  As a result of such intentional conduct, Plaintiff SCOTT is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT III – DENIAL OF DUE PROCESS IN VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AS TO DEFENDANTS STRUNK AND HARRISON

94.     Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

95.     Defendants STRUNK and HARRISON at all times relevant to this cause of action were agents and/or employees of Defendant BATTLE CREEK and were acting under the color of state law.

96.     At all times relevant to this cause of action, Plaintiff SCOTT had a constitutional right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution not to be deprived of life, liberty, or process without due process.

97.     Defendants STRUNK and HARRISON by stating deliberate falsehoods or making deliberate omissions or showing reckless disregard for the truth violated a fundamental principle of liberty and justice that inheres in the very idea of a free government and is the inalienable right of a citizen of such government.

98.     The facts that Ms. Hall had not, and could not have, seen a tattoo on the suspect's wrist, that Ms. Hall did not report to Defendants STRUNK or HARRISON within a week after the incident that she had seen a tattoo on a suspect's hand or wrist, and that the tattoo on Plaintiff SCOTT's wrist was not identified in any police investigation reports until Defendants STRUNK and HARRISON had identified Plaintiff SCOTT as a suspect were known to Defendants STRUNK and HARRISON and were exculpatory evidence.

99.     The right to receive exculpatory evidence is of the very essence of a scheme of ordered liberty.

100.     The false statements or omissions of Defendants STRUNK and HARRISON were the proximate cause of Plaintiff SCOTT's failure to receive exculpatory evidence in violation of his right to due process of law.

101.     The constitutional right to due process under the Fourteenth Amendment to the United States Constitution is and was at times relevant to this cause of action clearly establish of which a reasonable person and/or police officer would have known, and the actions of Defendants STRUNK and HARRISON were therefore objectively unreasonable in light of such clearly established rights.

102.    Defendants STRUNK and HARRISON are not entitled to qualified immunity.

103.    As a direct and proximate result of the actions of Defendants STRUNK and HARRISON as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

     a.  Physical pain and suffering;

     b.  Mental anguish;

     c.  Fright and shock;

     d.  Denial of social pleasure and enjoyments;

     e.  Embarrassment, humiliation or mortification;

     f.  Lost wages and/or earning capacity; and

     g.  All other damages learned through the course of discovery.

104.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff SCOTT for all damages allowed under federal law.  To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff SCOTT and/or to punish or deter Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

105.    The actions of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the damages that would be inflicted upon Plaintiff SCOTT.  As a result of such intentional conduct, Plaintiff SCOTT is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT IV – MUNICIPAL/SUPERVISORY LIABILITY PURSUANT TO 42 U.S.C. § 1983 AS TO DEFENDANT CITY OF BATTLE CREEK

106.   Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

107.   Pursuant to 42 U.S.C § 1983, as well as the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, Defendant BATTLE CREEK owed Plaintiff SCOTT certain duties to properly hire, supervise, monitor, and train its employees and officers so as not violate the constitutional rights of individuals, and Plaintiff SCOTT in particular and as alleged throughout this Complaint, and to take proper measures to report, prevent or otherwise protect individuals such as Plaintiff SCOTT in the event that such violations occur.

108.   Defendant BATTLE CREEK is liable pursuant to 42 U.S.C § 1983, in that its policies, procedures, regulations, and customs, or that its failure to enact policies, procedures, regulations, and customs, such that such policies, procedures, regulations, and customs, caused and was the driving force behind the violation of Plaintiff SCOTT's constitutional rights as alleged throughout this Complaint.

109.   Defendant BATTLE CREEK was deliberately indifferent to Plaintiff SCOTT's constitutional and other rights by failing to promulgate a policy and failing to properly train its personnel and employees to prevent the violation of individuals' constitutional rights, including Plaintiff SCOTT, as alleged throughout this Complaint.

110.    Defendant BATTLE CREEK was deliberately indifferent to Plaintiff SCOTT's constitutional and other rights by failing to supervise its personnel and employees when they knew of specific and repeated acts violations of individuals' constitutional rights.

111.    Defendant BATTLE CREEK through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to reckless and/or deliberate indifference toward the general public, and toward Plaintiff SCOTT specifically, in the following ways including, but not limited to:

   a. Failing to properly train its employees regarding disclosure or falsification of evidence;

   b. Employing and retaining improperly trained employees and officers;

   c. Failing to enact or provide training on proper policies regarding the disclosure and/or falsification of evidence;

   d. Failing to enact or provide training on proper policies;

   e. Failing to have proper policies, procedures, and training regarding the disclosure and/or falsification of evidence;

   f. Failure to hire and/or retain employees whose character and personality would not pose a potential violation individuals' constitutional rights;

   g. Failure to adequately monitor the conduct and behavior of its officers;

   h. Sanctioning the conduct as alleged throughout this Complaint by failing to adequately discipline or terminate employees who are known to have engaged in such conduct;

   i. Having a custom, policy, or practice of tolerating the violation of constitutional rights by employees;

   j. Ratifying the violation of constitutional rights by employees;

   k. Other acts and omissions which may be learned through the course of discovery.

112. The above-enumerated actions, failures, and/or inactions constituted deliberate indifference to the violation of Plaintiff SCOTT's constitutional rights by employees of Defendant BATTLE CREEK, including, but not limited to, those alleged in this Complaint.

113. As a direct and proximate result of the actions, failures, and/or inactions as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

     a. Physical pain and suffering;

     b. Mental anguish;

     c. Fright and shock;

     d. Denial of social pleasure and enjoyments;

     e. Embarrassment, humiliation or mortification;

     f. Lost wages and/or earning capacity; and

     g. All other damages learned through the course of discovery.

114. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff SCOTT for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff SCOTT and/or to punish or deter Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

115. The actions of Defendants as described above were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the damages that would be inflicted upon Plaintiff SCOTT. As a result of such intentional conduct, Plaintiff SCOTT is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

**COUNT V – UNLAWFUL ARREST AS TO DEFENDANTS STRUNK AND HARRISON**

116.    Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

117.    Plaintiff SCOTT was arrested by Defendant STRUNK and/or HARRISON.

118.    Plaintiff SCOTT was aware of the arrest and it was against his will.

119.    Defendant STRUNK and/or HARRISON intended to arrest Plaintiff SCOTT.

120.    Such an arret was unlawful because there lacked probable cause to arrest Plaintiff SCOTT.

121.    Defendant STRUNK's and HARRISON's conduct, as set forth above, was undertaken during the course of their employment and they were acting, or reasonably believed that they were acting, within the scope of their authority, and was not undertaken in good faith but rather with malice, and was discretionary.

122.    Defendant STRUNK and/or HARRISON are not entitled to governmental immunity under Michigan law.

123.    As a direct and proximate result of the actions, failures, and/or inactions as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

    a.  Physical pain and suffering;

    b.  Mental anguish;

    c.   Fright and shock;

    d.   Denial of social pleasure and enjoyments;

    e.   Embarrassment, humiliation or mortification;

    f.   Lost wages and/or earning capacity; and

    g.   All other damages learned through the course of discovery.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT VI – MALICIOUS PROSECUTION AS TO DEFENDANTS STRUNK AND HARRISON

124.    Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

125.    The criminal prosecution of Plaintiff SCOTT was caused or continued by Defendant STRUNK and/or HARRISON.

126.    The criminal prosecution was terminated in Plaintiff SCOTT's favor when he was acquitted of all charges.

127.    There existed no probable cause for initiating and continuing the criminal prosecution.

128.    The initiation and continuation of the criminal proceeding was done with malice or a primary purpose other than that of bringing the offender to justice.

129.    Defendant STRUNK's and HARRISON's conduct, as set forth above, was undertaken during the course of their employment and they were acting, or reasonably believed

that they were acting, within the scope of their authority, and was not undertaken in good faith but rather with malice, and was discretionary.

130.    Defendant STRUNK and/or HARRISON are not entitled to governmental immunity under Michigan law.

131.    As a direct and proximate result of the actions, failures, and/or inactions as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

     a.  Physical pain and suffering;

     b.  Mental anguish;

     c.  Fright and shock;

     d.  Denial of social pleasure and enjoyments;

     e.  Embarrassment, humiliation or mortification;

     f.  Lost wages and/or earning capacity; and

     g.  All other damages learned through the course of discovery.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT VII – FALSE IMPRISONMENT AS TO DEFENDANTS STRUNK AND HARRISON

132.    Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

133.    Plaintiff SCOTT was imprisoned when he was arrested without probable cause and was thereby deprived of his personal liberty and freedom of movement.

134.    Such imprisonment was against Plaintiff SCOTT's will.

135.    Defendant STRUNK and/or HARRISON intended to deprive Plaintiff SCOTT of his personal liberty and freedom of movement.

136.    Such imprisonment was unlawful because the arrest was made without probable cause.

137.    Defendant STRUNK's and HARRISON's conduct, as set forth above, was undertaken during the course of their employment and they were acting, or reasonably believed that they were acting, within the scope of their authority, and was not undertaken in good faith but rather with malice, and was discretionary.

138.    Defendant STRUNK and/or HARRISON are not entitled to governmental immunity under Michigan law.

139.    As a direct and proximate result of the actions, failures, and/or inactions as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

       a.   Physical pain and suffering;

       b.   Mental anguish;

       c.   Fright and shock;

       d.   Denial of social pleasure and enjoyments;

       e.   Embarrassment, humiliation or mortification;

       f.   Lost wages and/or earning capacity; and

       g.   All other damages learned through the course of discovery.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of

$75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT VIII – GROSS NEGLIGENCE AS TO DEFENDANT'S STRUNK AND HARRISON

140.    Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

141.    Defendants STRUNK and HARRISON owed Plaintiff SCOTT a duty to act in a reasonable manner and not in a grossly negligent manner, to act prudently and with reasonable care.

142.    Defendants STRUNK and HARRISON breached that duty and were grossly negligent, or acted so recklessly as to demonstrate a substantial lack of concern whether injury would result, when they made false statements or omissions that created a falsehood that Ms. Hall had identified a tattoo that would identify Plaintiff SCOTT as a perpetrator of a crime prior to the time that he was identified as a potential suspect when she in fact had not, and could not have, seen any tattoos on the individual's wrist or forearm.

143.    Defendant STRUNK and/or HARRISON are not entitled to governmental immunity under Michigan law.

144.    As a direct and proximate result of the actions, failures, and/or inactions as set forth herein, Plaintiff SCOTT suffered damages, and will continue to suffer damages in the future, including, but not limited to, the following:

     a.   Physical pain and suffering;

     b.   Mental anguish;

     c.   Fright and shock;

     d.   Denial of social pleasure and enjoyments;

26

e.   Embarrassment, humiliation or mortification;

f.   Lost wages and/or earning capacity; and

g.   All other damages learned through the course of discovery.

WHEREFORE, Plaintiff SCOTT respectfully requests that this Honorable Court enter judgment in his favor and against the above-named Defendants in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

Respectfully submitted,

JOHNSON LAW, PLC
Attorneys for Plaintiff
By:____/s/ *David S. Shiener*_____
DAVID S. SHIENER (P78608)
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
dshiener@venjohnsonlaw.com

Dated: January 6, 2021

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

PHILLIP ANDREW SCOTT,

       Plaintiff,

v.

CITY OF BATTLE CREEK, DET. RYAN STRUNK,
*in his Individual Capacity*, and OFFICER MICHAEL
HARRISON, *in his Individual Capacity*;
jointly and severally,

       Defendants.

Case No.
Hon.

---

DAVID S. SHIENER (P78608)
JEFFREY T. STEWART (P24138)
VEN R. JOHNSON (P39219)
**JOHNSON LAW, PLC**
535 Griswold, Suite 2632
Detroit, Michigan 46226
(313) 324-8300
dshiener@venjohnsonlaw.com
jstewart@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com

---

**PLAINTIFF'S JURY DEMAND**

---

      NOW COMES Plaintiff PHILLIP ANDREW SCOTT, by and through his attorneys

JOHNSON LAW, PLC, and hereby demands a trial by jury in the above-captioned matter.

                Respectfully submitted,

                JOHNSON LAW, PLC
                Attorneys for Plaintiff
                By:_____/s/ *David S. Shiener*_____
                DAVID S. SHIENER (P78608)
                535 Griswold Street, Suite 2632
                Detroit, Michigan 48226
                (313) 324-8300
                dshiener@venjohnsonlaw.com

Dated: January 6, 2021